# UNITED STATES COURT OF INTERNATIONAL TRADE

GFL AMERICAS LLC,

 *Plaintiff*,

 v.

UNITED STATES,

U.S. CUSTOMS AND BORDER
PROTECTION,

 and

RODNEY S. SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border
Protection,

 *Defendants*.

Court No. 26-02587

## **COMPLAINT**

GFL Americas LLC ("Plaintiff"), by and through its undersigned counsel, alleges and states as follows:

1. Plaintiff is a limited liability company, incorporated in the state of Texas, the United States.

2. Plaintiff is registered as an importer of record in the United States with U.S. Customs and Border Protection ("CBP") and challenges the assessment of certain tariffs on its imported merchandise.

3. President Donald J. Trump invoked the International Emergency Economic Powers Act of 1977, 50 U.S.C. §§ 1701, *et seq*. ("IEEPA"), to impose tariffs on most merchandise imported into the United States (the "IEEPA Tariffs").  *See, e.g.*, *Executive Order 14195 of February 1, 2025, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of*

*China*, 90 Fed. Reg. 9121 (Feb. 7, 2025); *Executive Order 14257 of April 2, 2025, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025); *Executive Order 14329 of August 6, 2025, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (Aug. 11, 2025).[1]

4.      On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources v. Trump*, 146 S. Ct. 628, 646 (2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5.      The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the U.S. Court of International Trade. *Id.* at 637 n.1.  Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA Tariffs paid by importers.

6.      Plaintiff is filing this action to protect its entitlement to refunds of its IEEPA Tariffs (regardless of whether the subject entries have been liquidated or are currently unliquidated) and so as to ensure that the tariffs cannot be considered final upon liquidation, such that Plaintiff is deprived of a remedy for unlawfully collected IEEPA Tariffs.

7.      Accordingly, Plaintiff seeks with respect to itself and its own entries: (i) a declaration that the IEEPA Tariffs and the executive orders underlying the IEEPA Tariffs were and are unlawful as applied to Plaintiff; (ii) a full refund from Defendants of all deposits of IEEPA Tariffs already

---

[1] Plaintiff incorporates and challenges all amendments, modification, updates, or adjustments to the executive orders in this action.

paid; and (iii) a full refund from Defendants of any IEEPA Tariffs paid by Plaintiff for entries that have been or will be liquidated.

## JURISDICTION

8.      The Court possesses subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i).  *See Learning Resources*, 146 S. Ct. at 637 n.1.

9.      Section 1581(i)(1) of Title 28 of the U.S. Code provides, in relevant part, that:

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
> . . .
>
> (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section.

28 U.S.C. § 1581(i)(1).

10.     Plaintiff's suit arises from the administration and collection of the IEEPA Tariffs, which are "tariffs" and "duties" imposed for reasons other than raising revenue.  It also involves the "administration and enforcement" of these matters.

11.     This Court has the same powers at law, in equity, and as conferred by statute as any U.S. District Court.  *See id.* § 1585.  In a civil action under 28 U.S.C. § 1581, this Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition.  *Id.* § 2643(a)(1), (c)(1).

**STANDING**

12. Plaintiff has both constitutional and statutory standing. Plaintiff has suffered an actual, imminent injury that is fairly traceable to the implementation, administration, collection, and enforcement of the IEEPA Tariffs that can be redressed by a declaratory judgment and an order directing Defendants to liquidate or reliquidate and refund IEEPA Tariffs or deposits of IEEPA Tariffs that Plaintiff has paid.

13. Plaintiff is the importer of record for imports that entered into the United States from countries that were subject to the unlawful IEEPA Tariffs as implemented, administered, and collected by Defendants. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid deposits of IEEPA Tariffs to the United States, and thus have suffered injury caused by those orders. This Court can order relief that would redress those injuries.

14. Plaintiff has been required to pay IEEPA Tariffs pursuant to the underlying executive orders, which the Supreme Court has determined are unlawful.

15. Plaintiff also faces imminent and irreparable harm because entries for which it paid deposits of IEEPA Tariffs have liquidated and/or are anticipated to liquidate in the near future. Absent action by this Court, Plaintiff will be unable to obtain relief, and liquidation of its entries may become final. *See AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, 2025 WL 3634261, at *4 (Ct. Int'l Trade Dec. 15, 2025) (noting that the appropriate jurisdictional basis to obtain relief from the collection of unconstitutional tariffs, and the enforcement of the executive orders underlying them, is 28 U.S.C. § 1581(i)).

16. To invoke the jurisdiction of a federal court, a party must meet the case or controversy requirements of Article III of the Constitution. *See* U.S. Const. art. III, § 2, cl. 1; *cf.* 28 U.S.C. § 251 (establishing the U.S. Court of International Trade ("CIT") as an Article III court). The

constitutional standing inquiry requires a plaintiff to "demonstrate that it suffered an injury in fact: a concrete and particularized 'invasion of a legally protected interest' that is actual or imminent, rather than conjectural or hypothetical." *Hoshine Silicon (Jia Xing) Indus. v. United States*, 780 F. Supp. 3d 1328, 1335 (Ct. Int'l Trade 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260–61 (1977). The plaintiff must also demonstrate "that a favorable decision will likely redress [the] injury." *Massachusetts v. EPA*, 549 U.S. 497, 498 (2007); *see also Lujan*, 504 U.S. at 561. "Indirect injuries . . . are sufficient for standing purposes so long as the injury is fairly traceable to defendants' conduct." *Hoshine Silicon*, 780 F. Supp. 3d at 1335 (citing *Vill. Of Arlington Heights*, 429 U.S. at 261).

17. The IEEPA Tariffs implemented, administered, enforced, and collected by Defendants pursuant to the underlying executive orders have adversely affected and aggrieved Plaintiff because Plaintiff was required to pay these unlawful duties. The constitutional requirements for injury-in-fact are satisfied when there is by the imposition of such concrete and probable economic harm. *Clinton v. City of New York*, 524 U.S. 417, 433 (1998).

18. Plaintiff was also "adversely affected" and "aggrieved" by the Defendants' implementation, administration, enforcement, and collection of the IEEPA Tariffs within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704, 706. *See* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of [5 U.S.C. § 702].").

19. Defendants have stipulated to reliquidate entries on which IEEPA Tariffs were collected in at least one case pending before this Court and have indicated that they will not oppose

reliquidation in another case pending before this Court. This Court has confirmed that Defendants' "stipulation regarding liquidation applies to all current and future similarly situated plaintiffs." *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, CIT Consol. Case No. 25-00255, ECF No. 35 (Jan. 14, 2026) (paperless order).

20. Plaintiff is initiating this appeal to be considered "similarly situated" within the meaning of the Court's order. And, upon filing this Complaint and a Summons, Plaintiff is "similarly situated plaintiffs," such that Defendants' stipulation regarding reliquidation applies to Plaintiff and its entries.

21. Plaintiff is entitled to "meaningful backward-looking relief," consistent with due process, in the form of refund of the IEEPA Tariffs that Plaintiff has deposited or paid, and that Defendants have unlawfully collected. *See Reich v. Collins*, 513 U.S. 106, 107 (1994); *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 31 (1990).

22. Because Defendants have assumed the position that the plaintiffs in other appeals are entitled to relief in the form of reliquidation and/or refunds, Defendants may not contest this Court's authority to order reliquidation and/or refunds of IEEPA Tariffs in this action. *See Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019); *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1353 (Fed. Cir. 2010).

23. To be sure that Plaintiff's rights to refunds of IEEPA Tariffs is protected, this legal challenge is necessary.

**PARTIES**

24. Plaintiff is an importer of fluorochemicals such as polytetrafluoroethylene, polyvinylidene fluoride, perfluoro alkoxy, and fluoroelastomers.

25. Plaintiff, as importer, was required to pay IEEPA Tariffs for imports of these products.

6

26. Defendant United States received the IEEPA Tariffs deposited by Plaintiff and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i). The actions complained of in this Complaint were undertaken by its agency, Defendant CBP.

27. Defendant CBP is the executive agency, organized under the U.S. Department of Homeland Security, that is responsible for collecting tariffs on goods imported into the United States. CBP collected the IEEPA Tariff deposits that were deposited by Plaintiff. CBP is headquartered at 1300 Pennsylvania Avenue NW, Washington, DC 20229.

28. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

## TIMELINESS OF THE ACTION

29. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

30. The instant action is filed within two years of the effective dates of the executive orders imposing IEEPA Tariffs. In the alternative, the instant action is filed within two years of the dates of payments of the IEEPA Tariffs upon entry. This action is therefore timely filed.

## STATUTORY AND CONSTITUTIONAL OVERVIEW

31. The United States Constitution provides that "[a]ll Legislative powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1.

32. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises" and "[t]o regulate Commerce with foreign Nations." *Id.*, art. I, § 8.

33. These clauses have been understood to confer to Congress, and only to Congress, the authority to impose tariffs.

34. The IEEPA statute provides that, "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States," the President may declare an emergency with respect to that threat. 50 U.S.C. § 1701(a).

35. When the President declares such a threat, then "under such regulations as he may prescribe, by means of instructions, licenses, or otherwise" the President may "regulate" the "importation" of "any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." *Id.* § 1702(a)(1)(B).

36. The Supreme Court decided that the IEEPA statute does not authorize the President to impose tariffs. *See Learning Resources*, 146 S. Ct. at 628–46.

37. The APA provides broad judicial review of agency actions brought by "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

38. The APA states that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

### PROCEDURAL AND FACTUAL BACKGROUND

39. Beginning in February 2025, the President, relying on the IEEPA statute, issued several executive orders assessing tariffs on imported merchandise.

40. Relevant to Plaintiff, on April 2, 2025, the President issued an executive order, pursuant to the IEEPA statute, imposing a 10% tariff on imports from nearly every country in the world, and additional tariffs on imports from several countries (the "Reciprocal Tariffs"). *See, e.g.*,

*Executive Order 14257 of April 2, 2025, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025).

41.     President Trump also signed executive orders imposing IEEPA Tariffs on imported merchandise of India (the "India Tariffs"). *See, e.g.*, *Executive Order 14329 of August 6, 2025, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (Aug. 11, 2025).

42.     After issuing the initial orders underlying the Reciprocal Tariffs and the India Tariffs, Defendants, through executive orders and federal register notices, issued several modifications, updates, and amendments to the IEEPA Tariffs at issue. *See, e.g.*, *Executive Order 14266 of April 9, 2025, Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 15, 2025); *Executive Order 14298 of May 12, 2025, Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21831 (May 21, 2025); *Executive Order 14316 of July 7, 2025, Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30823 (July 10, 2025); *Executive Order 14326 of July 31, 2025, Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37963 (Aug. 6, 2025); *Notice of Implementation of Additional Duties on Products of India Pursuant to the President's Executive Order 14329, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 41837 (CBP Aug. 27, 2025); *Executive Order 14360 of November 14, 2025, Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products*, 90 Fed. Reg. 54091 (Nov. 25, 2025); *Executive Order 14384 of February 6, 2026, Modifying Duties To Address Threats to the United States by the Government of the Russian Federation*, 91 Fed. Reg. 6501 (Feb. 11, 2026).

43.     The executive orders also modified, or directed federal agencies to modify, the Harmonized Tariff Schedule of the United States ("HTSUS") to include the IEEPA Tariffs in various chapter 99 headings.

44.     Plaintiff classified its imported merchandise under the chapter 99 headings that impose IEEPA Tariffs, as required under the HTSUS and the executive orders.

45.     Importers of record, like Plaintiff, paid deposits of estimated IEEPA Tariffs, like all other duties, at the time of entry.  *See* 19 U.S.C. § 1505(a).

46.     Plaintiff has paid all estimated duties, taxes, and fees, including IEEPA Tariffs owed on its entries of imported merchandise.

47.     On February 20, 2026, the Supreme Court issued its opinion holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, 146 S. Ct. at 646.

48.     On February 20, 2026, the President issued an issued an executive order rescinding certain executive orders imposing duties under IEEPA, including the Reciprocal Tariffs and the India Tariffs.  *See Executive Order 14389 of February 20, 2026, Ending Certain Tariff Actions*, 91 Fed. Reg. 9437 (Feb. 25, 2026).

<u>**STATEMENT OF CLAIMS**</u>

**COUNT I**

49.     The facts and allegations contained in paragraphs 1 through 48 are restated and incorporated herein by reference.

50.     The administration of the Reciprocal Tariffs and the India Tariffs by the underlying executive orders and amendments or modifications thereto, *see, e.g., Executive Order 14257 of April 2, 2025, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025); *Executive Order 14266 of April 9, 2025, Modifying Reciprocal Tariff Rates*

*To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 15, 2025); *Executive Order 14298 of May 12, 2025, Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21831 (May 21, 2025); *Executive Order 14316 of July 7, 2025, Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30823 (July 10, 2025); *Executive Order 14326 of July 31, 2025, Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37963 (Aug. 6, 2025); *Executive Order 14329 of August 6, 2025, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (Aug. 11, 2025); *Notice of Implementation of Additional Duties on Products of India Pursuant to the President's Executive Order 14329, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 41837 (CBP Aug. 27, 2025); *Executive Order 14360 of November 14, 2025, Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products*, 90 Fed. Reg. 54091 (Nov. 25, 2025); *Executive Order 14384 of February 6, 2026, Modifying Duties To Address Threats to the United States by the Government of the Russian Federation*, 91 Fed. Reg. 6501 (Feb. 11, 2026), as well as the implementation and enforcement of such tariffs through the modification of the HTSUS and the collection of such tariffs by Defendants, is unlawful because the IEEPA statute does not provide Defendants the authority to collect or administer these tariffs on imported merchandise.

51.     The IEEPA statute delegates to the President the authority to "regulate" the "importation . . . of . . . any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B).

52.     "[C]ourts expect Congress to speak clearly if it wishes" to assign the authority to make decision of "vast economic and political significance" to an agency. *West Virginia v. EPA*, 597

U.S. 697, 716 (2022) (cleaned up).  And, more specifically, "{w}hen Congress has delegated its tariff powers, it has done so in explicit terms, and subject to strict limits."  *Learning Resources*, 146 S. Ct. at 639.

53.     By delegating the power to "regulate . . . importation," the IEEPA statute does not delegate to the Executive Branch the authority to collect, implement, administer, or enforce tariffs or customs duties.  *See id*. at 637.

54.     The IEEPA Tariffs are "of vast economic and political significance."  As the Supreme Court noted, the IEEPA Tariffs "dwarf" the stakes "of other major questions cases."  *Id*. at 641.

55.     For these reasons, and those provided in *Learning Resources*, the executive orders creating, implementing, administering, and enforcing the IEEPA Tariffs exceed Defendants' statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

56.     Plaintiff respectfully requests that this Court declare the orders underlying the IEEPA Tariffs unlawful as to Plaintiff and order a refund of all IEEPA Tariffs collected from or paid by Plaintiff, with interest as provided by law.

57.     To the extent that Plaintiff's entries have already liquidated or liquidate during the pendency of this action (including any appeal), the Court should exercise its authority under 28 U.S.C. § 1581(i) to order reliquidation of all such entries so that Plaintiff may receive refunds of all IEEPA Tariffs, with interest as provided by law.

**COUNT II**

58.     The facts and allegations contained in paragraphs 1 through 57 are restated and incorporated herein by reference.

59.     Federal courts have the power to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).

60.     Plaintiff's claims present an actual controversy as to the President's authority under the IEEPA statute, the constitutionality of the IEEPA statute's supposed delegation of tariffing power to the President, and the authority of CBP to implement, enforce, administer, and collect the resulting IEEPA Tariffs.

61.     Plaintiff is the importer of record and has suffered injury by being required to pay the IEEPA Tariffs on goods it has imported into the United States as a result of the underlying executive orders.

62.     This Court can exercise its equitable power to enter a declaratory judgment that the executive orders underlying the IEEPA Tariffs are unlawful for the above reasons, and that Defendants unlawfully implemented, enforced, administered, and collected the resulting tariffs, as to Plaintiff, such that the Court should order refunds of all IEEPA Tariffs deposited or paid by Plaintiff, with interest as provided by law.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

(1)     Declare that the IEEPA statute did not authorize Defendants to implement, enforce, administer, or collect the IEEPA Tariffs;

(2)     Declare that the executive orders underlying the IEEPA Tariffs are *ultra vires* and void *ab initio* as to Plaintiff;

(3)     Declare that, with respect to Plaintiff, CBP lacked authority to implement, enforce, administer, and collect any tariffs set out in the HTSUS that are based on the executive orders underlying the IEEPA Tariffs;

(4)     Order Defendants to refund to Plaintiff all IEEPA Tariffs collected on entries for which Plaintiff paid deposits of IEEPA Tariffs with interest as provided by law;

(5)      Order Defendants to refund to Plaintiff all IEEPA Tariffs paid by Plaintiff on any entries that are liquidated or become liquidated during the pendency of this action (including any appeal), with interest as provided by law;

(6)      Award Plaintiff reasonable costs, including attorneys' fees, incurred in bringing this action; and

(7)      Grant such further relief as this Court deems proper.

**/s/ Nancy A. Noonan**
Nancy A. Noonan
John M. Gurley
Jessica R. DiPietro
Yun Gao
Tyler J. Kimberly

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 857-6479

*Counsel to GFL Americas LLC*

Dated: March 31, 2026